1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    MATT P. JACOBSEN,                      Case No. 3:12-cv-00486-MMD-WGC

10                          Plaintiff,
                                                          ORDER
11        v.
                                            (Defs.' Motion to Dismiss – dkt. no. 6;
12   HSBC BANK USA, N.A., et al.,           Plf.'s Motion for Leave to File Response
                                                        – dkt. no. 11;
13                         Defendants.      Plf.'s Cross-Motion for Summary Judgment
                                                        – dkt. no. 13;
14                                          Plf.'s Motion for Temporary Restraining
                                                     Order – dkt. no.  24)
15

16   **I.     SUMMARY**

17        Before the Court is Defendants HSBC Bank and HSBC Mortgage Corporation's

18   (collectively "HSBC") Motion to Dismiss (dkt. no. 6), as well as Plaintiff Matt P.

19   Jacobsen's Motions for Leave to File Response (dkt. no. 11), Conditional Cross-Motion

20   for Summary Judgment (dkt. no. 13), and Motion for a Temporary Restraining Order (dkt.

21   no. 24).

22   **II.    BACKGROUND**

23        Jacobsen acquired the property located at 1311 La Loma Drive, Carson City, NV

24   89701 ("the Property") on June 23, 2005.  In order to purchase the property, Jacobsen

25   obtained a loan from Countrywide Bank for $239,920, which was secured by a Deed of

26   Trust dated June 20, 2005. (Dkt. no. 7-1.)

27        Jacobsen acquired a second loan from HSBC Mortgage Corporation for

28   $246,000, which was secured by a second Deed of Trust ("Second Deed of Trust").

1  (Dkt. no. 7-2.)  The Second Deed of Trust names HSBC Mortgage Corporation as the

2  lender, First American Title Insurance Company ("First American") as trustee, and

3  Mortgage Electronic Registration Systems ("MERS") as beneficiary and nominee.  (*Id.*)

4  The facts giving rise to this litigation arise under the Second Deed of Trust.

5  On July 27, 2010, MERS assigned all beneficial interest on the Second Deed of

6  Trust to HSBC Mortgage Corporation.  (Dkt. no. 7-4.)  The assignment was recorded on

7  August 6, 2010.

8  Also on July 27, 2010, Housekey Financial Corporation ("Housekey") executed

9  and recorded a Notice of Breach and Default and of Election to Sell Under Deed of Trust

10  ("Notice of Default").  (Dkt. no. 23-F.)

11  On August 6, 2010, HSBC recorded a Substitution of Trustee removing First

12  American and substituting Housekey as the trustee on the loan.  (Dkt. no. 7-E.)  The

13  Substitution shows an effective date of July 27, 2010 on the document.  (*Id.*)

14  On December 9, 2010, the State of Nevada Foreclosure Mediation Program

15  issued a Certificate stating that no request for mediation was made or the grantor (i.e.

16  Jacobsen) waived mediation. (Dkt. no. 7-G.)

17  On April 23, 2012, HSBC Mortgage Corporation executed a second Substitution

18  of Trustee designating Quality Loan as the new trustee.  (Dkt. no. 7-H.)  The Second

19  Substitution of Trustee was recorded on April 27, 2012.  (*Id.*)

20  On July 24, 2012, Quality Loan issued a Notice of Trustee's Sale informing

21  Jacobsen that he was in default of the Second Deed of Trust, and setting the date of

22  sale to August 23, 2012.  (Dkt. no. 7-I.)  This sale was postponed and rescheduled to

23  December 6, 2012, because Jacobsen filed for bankruptcy.  On August 2, 2012, HSBC

24  Mortgage Corporation assigned its rights under the Second Deed of Trust to HSBC

25  Bank.  (Dkt. no. 7-J.)  This second assignment was recorded on August 13, 2012.  (*Id.*)

26  Jacobsen filed this action on August 20, 2012, in the First Judicial District Court in

27  Carson City, Nevada, alleging that HSBC and Quality Loan Service Corporation ("Quality

28  Loan"), as the lender and purported trustee, improperly initiated foreclosure proceedings

1    on his property.  (*See* dkt. no. 1-1.)   Jacobsen alleged violations of the Real Estate

2    Settlement Procedures Act ("RESPA"), Fair Debt Collection Practices Act ("FDCPA"),

3    and civil RICO statutes, and sought declaratory relief and quiet title.   The foreclosure

4    sale previously set for August 23, 2012, was subsequently postponed.

5       On September 11, 2012, HSBC removed the action to this Court.  On September

6    18, 2012, HSBC filed a Motion to Dismiss seeking dismissal of all counts.  (Dkt. no. 6.)

7       On November 27, 2012, Jacobsen filed this Motion for Temporary Restraining

8    Order ("TRO"), seeking a court order enjoining Quality Loan from conducting the

9    foreclosure sale of his property as scheduled for December 6, 2012.  (Dkt. no. 24.)

10   **III. DISCUSSION**

11     **A. HSBC's Motion to Dismiss (dkt. no. 6.)**

12       **1. Legal Standard**

13      A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

14   relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide

15   "a short and plain statement of the claim showing that the pleader is entitled to relief."

16   Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While

17   Rule 8 does not require detailed factual allegations, it demands more than "labels and

18   conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v.*

19   *Iqbal*, 556 US 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

20   "Factual allegations must be enough to rise above the speculative level."  *Twombly*, 550

21   U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient

22   factual matter to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at

23   678 (internal citation omitted).

24      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

25   apply when considering motions to dismiss.  First, a district court must accept as true all

26   well-pled factual allegations in the complaint; however, legal conclusions are not entitled

27   to the assumption of truth.  *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a

28   cause of action, supported only by conclusory statements, do not suffice.  *Id.* at 678.

1    Second, a district court must consider whether the factual allegations in the complaint

2    allege a plausible claim for relief. *Id.* at 679.   A claim is facially plausible when the

3    plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that

4    the defendant is liable for the alleged misconduct. *Id.* at 678.   Where the complaint does

5    not permit the court to infer more than the mere possibility of misconduct, the complaint

6    has "alleged–but not shown–that the pleader is entitled to relief."   *Id.* at 679 (internal

7    quotation marks omitted).   When the claims in a complaint have not crossed the line

8    from conceivable to plausible, the complaint must be dismissed.   *Twombly*, 550 U.S. at

9    570.

10          A complaint must contain either direct or inferential allegations concerning "all the

11   material elements necessary to sustain recovery under *some* viable legal theory."

12   *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

13   1106 (7th Cir. 1989) (emphasis in original)).

14          On a motion to dismiss, the Court takes judicial notice of attached copies of

15   relevant publicly recorded documents.   See *Disabled Rights Action Comm. v. Las Vegas*

16   *Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of

17   the records of state agencies and other undisputed matters of public record under Fed.

18   R. Evid. 201).

19                    **2.    Analysis**

20          The Court addresses each count brought by Jacobsen in order, and considers

21   Jacobsen's late-filed response.   Accordingly, Jacobsen's Motion for Leave (dkt. no. 11)

22   to file a late response to HBSC's Motion to Dismiss is granted.

23                    **a.    Quiet Title**

24          In Nevada, a quiet title action may be brought "by any person against another

25   who claims an estate or interest in real property, adverse to the person bringing the

26   action, for the purpose of determining such adverse claim."   NRS § 40.010.   "In a quiet

27   title action, the burden of proof rests with the plaintiff to prove good title in himself."

28   *Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev.1996).   "Additionally, an

1   action to quiet title requires a plaintiff to allege that she has paid any debt owed on the

2   property." *Lalwani v. Wells Fargo Bank, N.A.,* No. 2-11-cv-84, 2011 WL 4574388, at *3

3   (D. Nev. Sep. 30, 2011) (citing *Ferguson v. Avelo Mortg., LLC,* No. B223447, 2011 WL

4   2139143, at *2 (Cal. App. 2d June 1, 2011).

5          Jacobsen alleges that he tendered full payment via private registered setoff bond,

6   and tendered $291,000 via electronic funds transfer to HSBC Bank.  He alleges that

7   these instruments were accepted because they were not returned to Jacobsen, and cites

8   UCC § 3-603 which discusses tender of payment.  This "bill of exchange" theory "has

9   been rejected in foreclosure cases by district courts across the country, as well as in the

10  District of Nevada." *West v. ReconTrust Co.*, No. 2:10-cv-1950, 2011 WL 3847174, at *4

11  (D. Nev. Aug. 30, 2011).   In light of the documentary record produced by HSBC,

12  Jacobsen has not pled sufficient facts to demonstrate his ability to cure the default.

13  Instead, he pleads in a conclusory manner that he attempted to cure the default with

14  payment in full, without providing documentary evidence or a meaningful description of

15  his attempts to tender this payment.  In light of his apparent inability to provide such full

16  tender to prevent foreclosure, the Court does not view his pleading as providing enough

17  facts to demonstrate a plausible cause of action for quiet title.  Accordingly, Jacobsen's

18  quiet title claim is dismissed with prejudice.

19                  **b.      Real Estate Settlement Procedures Act ("RESPA")**

20         Jacobsen also alleges a violation of RESPA, 12 U.S.C. § 2601 *et seq.*, relating to

21  a written request he allegedly sent to HSBC Mortgage Corporation on January 15, 2011.

22  HSBC never responded.

23         Section 2605(e) governs the "[d]uty of [a] loan servicer to respond to borrower

24  inquiries." 12 U.S.C. § 2605(e). Generally, "[i]f any servicer of a federally related

25  mortgage loan receives a qualified written request . . . for information relating to the

26  servicing of such loan, the servicer shall provide a written response acknowledging

27  receipt of the correspondence within 20 days . . . unless the action requested is taken

28  within such period."  *Id.* § 2605(e)(1)(A).  A "qualified written request" is:

1
2
3

a written correspondence . . . that . . . includes, or otherwise enables the servicer to identify, the name and account of the borrower; and . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

4 *Id.* § 2605(e)(1)(B), (B)(i)-(ii).

5         Jacobsen fails to allege that his letter constitutes a "qualified written request."

6 The extracted portions of his letter appear to demand only biographical data concerning

7 the loan's history, rather than provide any statement of reasons why Jacobsen believed

8 that his account is in error. Under similar circumstances, Nevada district courts have

9 dismissed RESPA claims for precisely this fault. *See, e.g.*, *Coleman v. Am. Home*

10 *Mortg. Servicing, Inc.*, No. 2-11-cv-178, 2011 WL 6131309, at *4 (D. Nev. Dec. 8, 2011).

11         Further, Jacobsen does not allege that he suffered pecuniary loss arising out of

12 an alleged failure to respond to this letter, as required by RESPA. *See Moon v.*

13 *Countrywide Home Loans, Inc.*, No. 3:09-cv-298, 2010 WL 522753, at * 5 (D. Nev. Feb.

14 9, 2010).

15         Accordingly, Jacobsen's RESPA claim is dismissed without prejudice.

16           **c.**      **Fair Debt Collection Practices Act ("FDCPA")**

17         Jacobsen's fourth cause of action for debt collection fails to state a claim because

18 none of the Defendants are debt collectors as required by statute. For a defendant to be

19 liable for a violation of the FDCPA, the defendant must be classified as a "debt collector"

20 within the meaning of the Act. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *McCurdy v.*

21 *Wells Fargo Bank, N.A.*, No. 2:10-cv-880, 2010 WL 4102943, at *3 (D. Nev. Oct. 18,

22 2010). The FDCPA defines a "debt collector" as a person "who regularly collects or

23 attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

24 due another." 15 U.S.C. § 1692a(6). "Foreclosure pursuant to a deed of trust does not

25 constitute debt collection under the FDCPA." *Smith v. Wachovia Mortg. Corp.*, No.

26 3:12-cv-26, 2012 WL 3222144, at *2 (D. Nev. Aug. 3, 2012) (citing *Camacho-Villa v.*

27 *Great W. Home Loans*, No. 3:10-cv-210, 2011 WL 1103681, at *4 (D. Nev. Mar. 23,

28 2011). "[T]he FDCPA's definition of 'debt collector' does not 'include the consumer's

1  creditors, a mortgage servicing company, or any assignee of the debt, so long as the

2  debt was not in default at the time it was assigned.'"  *Smith*, 2012 WL 3222144, at *2.

3  Since HBSC and Quality Loan are foreclosing on the Property pursuant to a deed of

4  trust, they do not qualify as "debt collectors" within the meaning of the FDCPA.

5  Jacobsen's FDCPA claim is dismissed with prejudice.

6

7              **d.      Racketeer   Influenced   and   Corrupt   Organizations
                         ("RICO")**

8        Jacobsen also lodges a RICO cause of action against Defendants for acts of mail

9  fraud in connection with a scheme to defraud homeowners and rental property owners.

10  "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3)

11  through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or

12  property.'"  *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)).

13  In addition, Jacobsen must do so consistent with Fed. R. Civ. P 9(b)'s heightened

14  pleading requirements for allegations of fraud.  Based on the documents before the

15  Court, and Jacobsen's bare allegations of fraud, Jacobsen fails to allege a plausible civil

16  RICO claim.  His claims that Defendants conspired to send out fraudulent foreclosure

17  documents are belied by the record and by his inability to claim a plausible defective

18  foreclosure claim.  Accordingly, this claim is dismissed with prejudice.

19              **e.      Statutory defective foreclosure**

20        In light of the Court's obligation to construe *pro se* plaintiff's pleadings liberally,

21  the Court understands the Jacobsen's Complaint as an attack on the foreclosure

22  proceedings under NRS § 107.080.  Consequently, the Court reviews, and dismisses,

23  whatever claim Jacobsen seeks to pursue under a statutory defective foreclosure theory.

24        Nevada law provides that a Deed of Trust is an instrument that may be used to

25  "secure the performance of an obligation or the payment of any debt."  NRS § 107.020.

26  Upon default, the beneficiary, the successor in interest of the beneficiary, or the trustee

27  may foreclose on the property through a trustee's sale to satisfy the obligation.  NRS §

28  107.080(2)(c).

1    The procedures for conducting a trustee's foreclosure sale are set forth in
2    NRS § 107.080.  To commence a foreclosure, the beneficiary, the successor in interest
3    of the beneficiary, or the trustee must execute and record a notice of default and election
4    to sell.  NRS § 107.080(2)(c).  A copy of the notice of default and election to sell must be
5    mailed by registered mail or certified mail with return receipt requested.  *Id.* at §
6    107.080(3).  The trustee or other person authorized to make the sale must wait at least
7    three months after recording the notice of default and election to sell before the sale may
8    proceed.  *Id.* at § 107.080(2)(d).  After the three month period, the trustee must give
9    notice of the time and place of the sale to each trustor by personal service or by mailing
10   the notice by registered or certified mail to the last known address of the trustor.  *Id.* at §
11   107.080(4)(a).  Under NRS § 107.080(5), a "sale made pursuant to this section may be
12   declared void by any court of competent jurisdiction in the county where the sale took
13   place if . . . [t]he trustee or other person authorized to make the sale does not
14   substantially comply with the provisions of this section."  *Id.* at § 107.080(5)(a).  A
15   nominee on a Deed of Trust has the authority, as an agent, to act on behalf of the holder
16   of the promissory note and execute a substitution of trustees.  *Gomez v. Countrywide*
17   *Bank, FSB*, 2009 WL 3617650, at *1 (D. Nev. Oct.26, 2009).  As long as the note is in
18   default and the foreclosing trustee is either the original trustee or has been substituted
19   by the holder of the note or the holder's nominee, there is no defect in the Nevada
20   foreclosure.  *Id.* at *2.  In the absence of substantial compliance with NRS § 107.080, a
21   borrower may state a defective foreclosure claim. In response, the non-judicial
22   foreclosure process must begin anew in compliance with state law.

23   Jacobsen first challenges MERS' authority to effectuate the July 27, 2010,
24   assignment of the beneficial interest on the Second Deed of Trust to HSBC Mortgage
25   Corporation. (Dkt. no. 7-4.)  This argument fails.  As nominee, MERS was provided the
26   authority to act on behalf of the holder of the note when executing the assignments.  *See*
27   *Gomez*, 2009 WL 3617650, at *1-2.  Accordingly, HSBC properly inherited the rights
28   under the note.

1         Jacobsen also appears to challenge the Housekey's authority to issue the Notice

2    of Default, in light of the later-recorded Substitution of Trustee purporting to substitute

3    First American for Housekey.  This argument also fails.  First, the Substitution shows an

4    effective date of July 27, 2010, on the document, and as such could have occurred prior

5    to Housekey's issuance of the Notice of Default.   Jacobsen presents no facts to

6    demonstrate that the effective date on the document was fraudulent.  But even were that

7    not the case, a later-filed substitution of trustee serves to ratify the prior act of the new

8    trustee.   "NRS 107.080 does not require that a particular party—trustee, beneficiary, or

9    their assigns—record notices of default or trustee sale."  *Berilo v. HSBC Mortg. Corp.,*

10   *USA*, No. 2:09-CV-2353, 2010 WL 2667218, at *4 (D. Nev. June 29, 2010).  "Nor does

11   Nevada law require a substitution of trustee be recorded prior to a notice of default."  *Id.*

12   The law only requires that a party filing a notice of default be an agent of the beneficiary.

13   *Nev. ex rel. Bates v. Mortgage Elec. Registration Sys., Inc.*, No. 3:10-CV-00407, 2011

14   WL 1582945, at *5 (D. Nev. Apr. 25, 2011) ("[A]ny party [the beneficiary] commands to

15   file a notice of default is by that fact alone a proper party as the beneficiary's agent.").

16   Assuming Housekey acted without the knowledge of the lender in issuing the Notice of

17   Default—an assumption that Jacobsen fails to demonstrate is warranted—Housekey's

18   later-recorded Substitution validates the Notice of Default.  That is, even assuming "a

19   rogue title company file[d] a notice of default without the knowledge of the beneficiary—

20   the Court has not yet seen such a case — the filing becomes proper if the beneficiary

21   later ratifies the act after discovering what has occurred."  *Bates*, 2011 WL 1582945, at

22   *5 (citing *Edwards v. Carson Water Co.*, 34 P. 381, 386-89 (Nev. 1893)).  Here, the fact

23   that Housekey was later substituted as a trustee "is practically insurmountable evidence

24   of ratification," the agency doctrine that allows for a principal to retroactively authorize an

25   actor's prior conduct.  *Id.*; *see* Restatement (Third) of Agency § 4.03.

26        Similarly, the substitution of Quality Loan, and Quality Loan's Notice of Sale was

27   also statutorily valid. So long as the Notices were issued in the proper order, and

28   Jacobsen was afforded sufficient notice pursuant to NRS 107.080, Jacobsen's challenge

1   to the Notice of Default must fail.  Jacobsen has thus failed to allege a plausible

2   defective foreclosure claim, and the claim must be dismissed with prejudice.

3   **B.      Jacobsen's Conditional Cross-Motion for Summary Judgment (dkt.**

4   **no. 13)**

5   As Jacobsen's claims have been dismissed, his Conditional Cross-Motion is

6   denied as moot.  Jacobsen brought this Cross-Motion in the event the Court construed

7   Defendants' Motion to Dismiss as a summary judgment request.  As the Court does not

8   do so, Jacobsen's Cross-Motion is denied.

9   **C.      Jacobsen's Motion for Temporary Restraining Order (dkt. no. 24)**

10   **1.      Legal Standard**

11   Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary

12   restraining orders, and requires that a motion for temporary restraining order include

13   "specific facts in an affidavit or a verified complaint [that] clearly show that immediate

14   and irreparable injury, loss, or damage will result to the movant before the adverse party

15   can be heard in opposition," as well as written certification from the movant's attorney

16   stating "any efforts made to give notice and the reasons why it should not be required."

17   Fed. R. Civ. P. 65(b).

18   Temporary restraining orders are governed by the same standard applicable to

19   preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs.,*

20   *Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001).  Furthermore, a temporary restraining

21   order "should be restricted to serving [its] underlying purpose of preserving the status

22   quo and preventing irreparable harm just so long as is necessary to hold a hearing, and

23   no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local*

24   *No. 70*, 415 U.S. 423, 439 (1974).

25   A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of

26   success on the merits; (2) likelihood of irreparable harm in the absence of preliminary

27   relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the

28   public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

1   "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear

2   showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held

3   that "'serious questions going to the merits' and a hardship balance that tips sharply

4   toward the plaintiff can support issuance of an injunction, assuming the other two

5   elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632

6   F.3d 1127, 1132 (9th Cir. 2011).

7                   **2.      Analysis**

8          Since the Court has dismissed all of Jacobsen's claims, his Motion for a TRO

9   must be denied because no outstanding claims survive to form the basis for injunctive

10  relief.   But even were the Court to address the substance of Jacobsen's Motion, a

11  restraining order would be inappropriate for the reasons discussed above.   Jacobsen

12  has not demonstrated a likelihood of success on the merits of any of his claims.   While

13  he no doubt faces irreparable harm in the absence of preliminary relief, his inability to

14  demonstrate any likelihood of success is fatal to his request for a TRO.   Consequently,

15  his Motion is denied.

16  **IV.     CONCLUSION**

17         IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (dkt. no. 6) is

18  GRANTED consistent with the reasoning set forth above.

19         IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Response

20  (dkt. no. 11) is GRANTED.

21         IT IS FURTHER ORDERED that Plaintiff's Conditional Cross-Motion for Summary

22  Judgment (dkt. no. 13) is DENIED.

23         IT IS FURTHER ORDERD that Plaintiff's Motion for Temporary Restraining Order

24  (dkt. no. 24) is DENIED.

25

26         DATED THIS 30th day of November 2012.

27                                                _____
                                                  MIRANDA M. DU
28                                                UNITED STATES DISTRICT JUDGE