UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MATT P. JACOBSEN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HSBC BANK USA, N.A., et al.,<br><br>　　　　　Defendants. | Case No. 3:12-cv-00486-MMD-WGC<br><br>ORDER<br><br>(Defs.' Motion to Dismiss – dkt. no. 6;<br>Plf.'s Motion for Leave to File Response<br>– dkt. no. 11;<br>Plf.'s Cross-Motion for Summary Judgment<br>– dkt. no. 13;<br>Plf.'s Motion for Temporary Restraining<br>Order – dkt. no. 24) |

**I.     SUMMARY**

Before the Court is Defendants HSBC Bank and HSBC Mortgage Corporation's (collectively "HSBC") Motion to Dismiss (dkt. no. 6), as well as Plaintiff Matt P. Jacobsen's Motions for Leave to File Response (dkt. no. 11), Conditional Cross-Motion for Summary Judgment (dkt. no. 13), and Motion for a Temporary Restraining Order (dkt. no. 24).

**II.    BACKGROUND**

Jacobsen acquired the property located at 1311 La Loma Drive, Carson City, NV 89701 ("the Property") on June 23, 2005. In order to purchase the property, Jacobsen obtained a loan from Countrywide Bank for $239,920, which was secured by a Deed of Trust dated June 20, 2005. (Dkt. no. 7-1.)

Jacobsen acquired a second loan from HSBC Mortgage Corporation for $246,000, which was secured by a second Deed of Trust ("Second Deed of Trust").

(Dkt. no. 7-2.) The Second Deed of Trust names HSBC Mortgage Corporation as the lender, First American Title Insurance Company ("First American") as trustee, and Mortgage Electronic Registration Systems ("MERS") as beneficiary and nominee. (*Id.*) The facts giving rise to this litigation arise under the Second Deed of Trust.

On July 27, 2010, MERS assigned all beneficial interest on the Second Deed of Trust to HSBC Mortgage Corporation. (Dkt. no. 7-4.) The assignment was recorded on August 6, 2010.

Also on July 27, 2010, Housekey Financial Corporation ("Housekey") executed and recorded a Notice of Breach and Default and of Election to Sell Under Deed of Trust ("Notice of Default"). (Dkt. no. 23-F.)

On August 6, 2010, HSBC recorded a Substitution of Trustee removing First American and substituting Housekey as the trustee on the loan. (Dkt. no. 7-E.) The Substitution shows an effective date of July 27, 2010 on the document. (*Id.*)

On December 9, 2010, the State of Nevada Foreclosure Mediation Program issued a Certificate stating that no request for mediation was made or the grantor (i.e. Jacobsen) waived mediation. (Dkt. no. 7-G.)

On April 23, 2012, HSBC Mortgage Corporation executed a second Substitution of Trustee designating Quality Loan as the new trustee. (Dkt. no. 7-H.) The Second Substitution of Trustee was recorded on April 27, 2012. (*Id.*)

On July 24, 2012, Quality Loan issued a Notice of Trustee's Sale informing Jacobsen that he was in default of the Second Deed of Trust, and setting the date of sale to August 23, 2012. (Dkt. no. 7-I.) This sale was postponed and rescheduled to December 6, 2012, because Jacobsen filed for bankruptcy. On August 2, 2012, HSBC Mortgage Corporation assigned its rights under the Second Deed of Trust to HSBC Bank. (Dkt. no. 7-J.) This second assignment was recorded on August 13, 2012. (*Id.*)

Jacobsen filed this action on August 20, 2012, in the First Judicial District Court in Carson City, Nevada, alleging that HSBC and Quality Loan Service Corporation ("Quality Loan"), as the lender and purported trustee, improperly initiated foreclosure proceedings

on his property. (*See* dkt. no. 1-1.)  Jacobsen alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), Fair Debt Collection Practices Act ("FDCPA"), and civil RICO statutes, and sought declaratory relief and quiet title. The foreclosure sale previously set for August 23, 2012, was subsequently postponed.

On September 11, 2012, HSBC removed the action to this Court. On September 18, 2012, HSBC filed a Motion to Dismiss seeking dismissal of all counts. (Dkt. no. 6.)

On November 27, 2012, Jacobsen filed this Motion for Temporary Restraining Order ("TRO"), seeking a court order enjoining Quality Loan from conducting the foreclosure sale of his property as scheduled for December 6, 2012. (Dkt. no. 24.)

## III. DISCUSSION

### A. HSBC's Motion to Dismiss (dkt. no. 6.)

#### 1. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

On a motion to dismiss, the Court takes judicial notice of attached copies of relevant publicly recorded documents. See *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

### 2. Analysis

The Court addresses each count brought by Jacobsen in order, and considers Jacobsen's late-filed response. Accordingly, Jacobsen's Motion for Leave (dkt. no. 11) to file a late response to HBSC's Motion to Dismiss is granted.

#### a. Quiet Title

In Nevada, a quiet title action may be brought "by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." NRS § 40.010. "In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself." *Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev.1996). "Additionally, an

action to quiet title requires a plaintiff to allege that she has paid any debt owed on the property." *Lalwani v. Wells Fargo Bank, N.A.,* No. 2-11-cv-84, 2011 WL 4574388, at *3 (D. Nev. Sep. 30, 2011) (citing *Ferguson v. Avelo Mortg., LLC,* No. B223447, 2011 WL 2139143, at *2 (Cal. App. 2d June 1, 2011).

Jacobsen alleges that he tendered full payment via private registered setoff bond, and tendered $291,000 via electronic funds transfer to HSBC Bank. He alleges that these instruments were accepted because they were not returned to Jacobsen, and cites UCC § 3-603 which discusses tender of payment. This "bill of exchange" theory "has been rejected in foreclosure cases by district courts across the country, as well as in the District of Nevada." *West v. ReconTrust Co.*, No. 2:10-cv-1950, 2011 WL 3847174, at *4 (D. Nev. Aug. 30, 2011). In light of the documentary record produced by HSBC, Jacobsen has not pled sufficient facts to demonstrate his ability to cure the default. Instead, he pleads in a conclusory manner that he attempted to cure the default with payment in full, without providing documentary evidence or a meaningful description of his attempts to tender this payment. In light of his apparent inability to provide such full tender to prevent foreclosure, the Court does not view his pleading as providing enough facts to demonstrate a plausible cause of action for quiet title. Accordingly, Jacobsen's quiet title claim is dismissed with prejudice.

### b.   Real Estate Settlement Procedures Act ("RESPA")

Jacobsen also alleges a violation of RESPA, 12 U.S.C. § 2601 *et seq.*, relating to a written request he allegedly sent to HSBC Mortgage Corporation on January 15, 2011. HSBC never responded.

Section 2605(e) governs the "[d]uty of [a] loan servicer to respond to borrower inquiries." 12 U.S.C. § 2605(e). Generally, "[i]f any servicer of a federally related mortgage loan receives a qualified written request . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." *Id.* § 2605(e)(1)(A). A "qualified written request" is:

> a written correspondence . . . that . . . includes, or otherwise enables the servicer to identify, the name and account of the borrower; and . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B), (B)(i)-(ii).

Jacobsen fails to allege that his letter constitutes a "qualified written request." The extracted portions of his letter appear to demand only biographical data concerning the loan's history, rather than provide any statement of reasons why Jacobsen believed that his account is in error. Under similar circumstances, Nevada district courts have dismissed RESPA claims for precisely this fault. *See, e.g., Coleman v. Am. Home Mortg. Servicing, Inc.*, No. 2-11-cv-178, 2011 WL 6131309, at *4 (D. Nev. Dec. 8, 2011).

Further, Jacobsen does not allege that he suffered pecuniary loss arising out of an alleged failure to respond to this letter, as required by RESPA. *See Moon v. Countrywide Home Loans, Inc.*, No. 3:09-cv-298, 2010 WL 522753, at * 5 (D. Nev. Feb. 9, 2010).

Accordingly, Jacobsen's RESPA claim is dismissed without prejudice.

### c.     Fair Debt Collection Practices Act ("FDCPA")

Jacobsen's fourth cause of action for debt collection fails to state a claim because none of the Defendants are debt collectors as required by statute. For a defendant to be liable for a violation of the FDCPA, the defendant must be classified as a "debt collector" within the meaning of the Act. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995); *McCurdy v. Wells Fargo Bank, N.A.*, No. 2:10-cv-880, 2010 WL 4102943, at *3 (D. Nev. Oct. 18, 2010). The FDCPA defines a "debt collector" as a person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Foreclosure pursuant to a deed of trust does not constitute debt collection under the FDCPA." *Smith v. Wachovia Mortg. Corp.*, No. 3:12-cv-26, 2012 WL 3222144, at *2 (D. Nev. Aug. 3, 2012) (citing *Camacho-Villa v. Great W. Home Loans*, No. 3:10-cv-210, 2011 WL 1103681, at *4 (D. Nev. Mar. 23, 2011). "[T]he FDCPA's definition of 'debt collector' does not 'include the consumer's

creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned.'" *Smith*, 2012 WL 3222144, at *2. Since HBSC and Quality Loan are foreclosing on the Property pursuant to a deed of trust, they do not qualify as "debt collectors" within the meaning of the FDCPA. Jacobsen's FDCPA claim is dismissed with prejudice.

### d. Racketeer Influenced and Corrupt Organizations ("RICO")

Jacobsen also lodges a RICO cause of action against Defendants for acts of mail fraud in connection with a scheme to defraud homeowners and rental property owners. "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)). In addition, Jacobsen must do so consistent with Fed. R. Civ. P 9(b)'s heightened pleading requirements for allegations of fraud. Based on the documents before the Court, and Jacobsen's bare allegations of fraud, Jacobsen fails to allege a plausible civil RICO claim. His claims that Defendants conspired to send out fraudulent foreclosure documents are belied by the record and by his inability to claim a plausible defective foreclosure claim. Accordingly, this claim is dismissed with prejudice.

### e. Statutory defective foreclosure

In light of the Court's obligation to construe *pro se* plaintiff's pleadings liberally, the Court understands the Jacobsen's Complaint as an attack on the foreclosure proceedings under NRS § 107.080. Consequently, the Court reviews, and dismisses, whatever claim Jacobsen seeks to pursue under a statutory defective foreclosure theory.

Nevada law provides that a Deed of Trust is an instrument that may be used to "secure the performance of an obligation or the payment of any debt." NRS § 107.020. Upon default, the beneficiary, the successor in interest of the beneficiary, or the trustee may foreclose on the property through a trustee's sale to satisfy the obligation. NRS § 107.080(2)(c).

The procedures for conducting a trustee's foreclosure sale are set forth in NRS § 107.080. To commence a foreclosure, the beneficiary, the successor in interest of the beneficiary, or the trustee must execute and record a notice of default and election to sell. NRS § 107.080(2)(c). A copy of the notice of default and election to sell must be mailed by registered mail or certified mail with return receipt requested. *Id.* at § 107.080(3). The trustee or other person authorized to make the sale must wait at least three months after recording the notice of default and election to sell before the sale may proceed. *Id.* at § 107.080(2)(d). After the three month period, the trustee must give notice of the time and place of the sale to each trustor by personal service or by mailing the notice by registered or certified mail to the last known address of the trustor. *Id.* at § 107.080(4)(a). Under NRS § 107.080(5), a "sale made pursuant to this section may be declared void by any court of competent jurisdiction in the county where the sale took place if . . . [t]he trustee or other person authorized to make the sale does not substantially comply with the provisions of this section." *Id.* at § 107.080(5)(a). A nominee on a Deed of Trust has the authority, as an agent, to act on behalf of the holder of the promissory note and execute a substitution of trustees. *Gomez v. Countrywide Bank, FSB*, 2009 WL 3617650, at *1 (D. Nev. Oct.26, 2009). As long as the note is in default and the foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is no defect in the Nevada foreclosure. *Id.* at *2. In the absence of substantial compliance with NRS § 107.080, a borrower may state a defective foreclosure claim. In response, the non-judicial foreclosure process must begin anew in compliance with state law.

Jacobsen first challenges MERS' authority to effectuate the July 27, 2010, assignment of the beneficial interest on the Second Deed of Trust to HSBC Mortgage Corporation. (Dkt. no. 7-4.) This argument fails. As nominee, MERS was provided the authority to act on behalf of the holder of the note when executing the assignments. *See Gomez*, 2009 WL 3617650, at *1-2. Accordingly, HSBC properly inherited the rights under the note.

Jacobsen also appears to challenge the Housekey's authority to issue the Notice of Default, in light of the later-recorded Substitution of Trustee purporting to substitute First American for Housekey. This argument also fails. First, the Substitution shows an effective date of July 27, 2010, on the document, and as such could have occurred prior to Housekey's issuance of the Notice of Default. Jacobsen presents no facts to demonstrate that the effective date on the document was fraudulent. But even were that not the case, a later-filed substitution of trustee serves to ratify the prior act of the new trustee. "NRS 107.080 does not require that a particular party—trustee, beneficiary, or their assigns—record notices of default or trustee sale." *Berilo v. HSBC Mortg. Corp., USA*, No. 2:09-CV-2353, 2010 WL 2667218, at *4 (D. Nev. June 29, 2010). "Nor does Nevada law require a substitution of trustee be recorded prior to a notice of default." *Id.* The law only requires that a party filing a notice of default be an agent of the beneficiary. *Nev. ex rel. Bates v. Mortgage Elec. Registration Sys., Inc.*, No. 3:10-CV-00407, 2011 WL 1582945, at *5 (D. Nev. Apr. 25, 2011) ("[A]ny party [the beneficiary] commands to file a notice of default is by that fact alone a proper party as the beneficiary's agent."). Assuming Housekey acted without the knowledge of the lender in issuing the Notice of Default—an assumption that Jacobsen fails to demonstrate is warranted—Housekey's later-recorded Substitution validates the Notice of Default. That is, even assuming "a rogue title company file[d] a notice of default without the knowledge of the beneficiary—the Court has not yet seen such a case — the filing becomes proper if the beneficiary later ratifies the act after discovering what has occurred." *Bates*, 2011 WL 1582945, at *5 (citing *Edwards v. Carson Water Co.*, 34 P. 381, 386-89 (Nev. 1893)). Here, the fact that Housekey was later substituted as a trustee "is practically insurmountable evidence of ratification," the agency doctrine that allows for a principal to retroactively authorize an actor's prior conduct. *Id.*; *see* Restatement (Third) of Agency § 4.03.

Similarly, the substitution of Quality Loan, and Quality Loan's Notice of Sale was also statutorily valid. So long as the Notices were issued in the proper order, and Jacobsen was afforded sufficient notice pursuant to NRS 107.080, Jacobsen's challenge

to the Notice of Default must fail. Jacobsen has thus failed to allege a plausible defective foreclosure claim, and the claim must be dismissed with prejudice.

### B. Jacobsen's Conditional Cross-Motion for Summary Judgment (dkt. no. 13)

As Jacobsen's claims have been dismissed, his Conditional Cross-Motion is denied as moot. Jacobsen brought this Cross-Motion in the event the Court construed Defendants' Motion to Dismiss as a summary judgment request. As the Court does not do so, Jacobsen's Cross-Motion is denied.

### C. Jacobsen's Motion for Temporary Restraining Order (dkt. no. 24)

#### 1. Legal Standard

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Furthermore, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

### 2.   Analysis

Since the Court has dismissed all of Jacobsen's claims, his Motion for a TRO must be denied because no outstanding claims survive to form the basis for injunctive relief. But even were the Court to address the substance of Jacobsen's Motion, a restraining order would be inappropriate for the reasons discussed above. Jacobsen has not demonstrated a likelihood of success on the merits of any of his claims. While he no doubt faces irreparable harm in the absence of preliminary relief, his inability to demonstrate any likelihood of success is fatal to his request for a TRO. Consequently, his Motion is denied.

### IV.   CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (dkt. no. 6) is GRANTED consistent with the reasoning set forth above.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Response (dkt. no. 11) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Conditional Cross-Motion for Summary Judgment (dkt. no. 13) is DENIED.

IT IS FURTHER ORDERD that Plaintiff's Motion for Temporary Restraining Order (dkt. no. 24) is DENIED.

DATED THIS 30th day of November 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE